Filed:  January 13, 1998

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

------------------

No. 97-2
(CA-96-86-5-H-HC)

------------------

Sherman Elwood Skipper,

                              Petitioner - Appellant,

        versus

James B. French, etc.,

                              Respondent - Appellee.

------------------

O R D E R

------------------

        The Court amends its opinion filed November 25, 1997, as follows:

        On page 15, footnote 2, line 1 -- the citation to "United States v. Dougherty" is corrected to read "United States v. Daughtry."

                              For the Court - By Direction

                              /s/ Patricia S. Connor
_____
                                    Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

SHERMAN ELWOOD SKIPPER,
Petitioner-Appellant,

v.

No. 97-2

JAMES B. FRENCH, Warden of
Central Prison,
Respondent-Appellee.

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Malcolm J. Howard, District Judge.
(CA-96-86-5-H-HC)

Argued: October 1, 1997

Decided: November 25, 1997

Before WIDENER and MICHAEL, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Vacated and remanded by published opinion. Senior Judge Phillips
wrote the opinion, in which Judge Widener and Judge Michael joined.

_____

**COUNSEL**

**ARGUED:** William Stanley Mills, GLENN, MILLS & FISHER,
Durham, North Carolina, for Appellant. Thomas Stephen Hicks, Spe-
cial Deputy Attorney General, NORTH CAROLINA DEPART-
MENT OF JUSTICE, Raleigh, North Carolina, for Appellee. **ON
BRIEF:** Gretchen Engel, CENTER FOR DEATH PENALTY LITI-

GATION, Durham, North Carolina, for Appellant. Michael F. Easley, Attorney General of North Carolina, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellee.

_____

**OPINION**

PHILLIPS, Senior Circuit Judge:

This is an appeal by Sherman Elwood Skipper from a district court order which dismissed, as procedurally barred, all the federal claims presented in his federal habeas corpus petition seeking relief from his North Carolina state court conviction and death sentence for first-degree murder. Because we conclude, on <u>de novo</u> review, that Skipper's federal claims were not procedurally barred, we vacate and remand for consideration of the claims by the district court.

I.

On the afternoon of August 25, 1990, Ailene Pittman and her eighteen-year-old grandson Nelson Fipps, Jr., were fatally shot to death by Skipper while they were standing in Pittman's front yard. Skipper had arrived at Pittman's home, accompanied by one Mark Smith, after an extended period of beer drinking. Skipper had been dating Pittman and apparently wanted to talk to her. After a fifteen or twenty-minute discussion in Pittman's front yard, Skipper returned to his truck and got in, whereupon Pittman told Smith not to bring Skipper to her home anymore. In response (and as Smith was beginning to pull away) Skipper reached behind the front seat of the pickup truck, pulled out a .223 semiautomatic rifle loaded with U.S. Army ammunition noted for its "effective wounding potential," and fired three times at Pittman, killing her. After a brief pause, Skipper trained the weapon on Nelson Fipps, Jr., and fired twice, stating "you too" just before firing. Skipper then turned to Smith and asked "did I get them" and then left with Smith to dispose of the weapon. After being on the run from authorities for nearly a week, Smith surrendered to the Columbus County Sheriff's Department. Based on information provided by Smith, Skipper was apprehended and in due course was indicted for the first-degree murders of Pittman and Fipps.

2

At his jury trial in Bladen County Superior Court, Skipper did not put on any evidence. The case was submitted to the jury for verdicts of guilty or not guilty of first-degree murder; the court refused to give a defense-requested instruction on second-degree murder as a lesser-included offense. On February 13, 1992, the jury found Skipper guilty, as charged, of both murders. The sentencing phase of trial was commenced immediately after return of the verdicts of guilt before the same jury.

The State presented as aggravating factors evidence that Skipper had been convicted of three felony assaults with a deadly weapon inflicting serious injury, including a stabbing incident that nearly severed the thumb of his then wife and the shooting of his brother in the back with a .22 caliber rifle. The State also submitted as a "course of conduct" aggravating factor the proximity of two or more violent acts in the commission of a crime.

In mitigation, the defense presented evidence that Skipper was once institutionalized for a drinking problem, that he would engage in drinking binges during which he would remain intoxicated for extended periods, and that he had been dropped on his head as a boy. Dr. Antonin E. Puente, an expert in the field of neuropsychology, testified that Skipper had a history of head injury, alcohol abuse, and antisocial behavior. Dr. Puente offered his opinion that Skipper was functionally illiterate, had an IQ of 69 (comparable to that of a six-year-old), and suffered from impaired memory, mental retardation, and a moderate to severe brain syndrome. In Dr. Puente's opinion, Skipper had a limited ability to comprehend the wrongfulness of his conduct and a diminished capacity to follow the law.

On February 19, 1992, the jury recommended death sentences for both murders and the trial court entered judgment to that effect. An execution date of April 17, 1992 was set. Skipper immediately gave notice of appeal as of right to the North Carolina Supreme Court pursuant to N.C. Gen. Stat. § 7A-27(a) and sought a stay of execution which was granted. His appeal raised thirty-one state and federal claims. The North Carolina Supreme Court affirmed the convictions and death sentences on July 29, 1994, rejecting in the process all the federal claims. See State v. Skipper, 446 S.E.2d 252 (1994). The

3

United States Supreme Court denied certiorari on January 23, 1995. See Skipper v. North Carolina, 513 U.S. 1134 (1995).

On April 17, 1995, counsel was appointed for Skipper in order to allow the pursuit of post-conviction collateral relief under the State's "motion for appropriate relief" procedure. See N.C. Gen. Stat. § 1401 et seq. The stay of execution was then extended until October 16, 1995. Over two months later, Skipper requested an ex parte hearing on a motion for funds to retain a mental-health expert with special expertise in mental retardation; the request for ex parte consideration was apparently made to avoid revealing litigation strategy. On October 12, 1995, Skipper's motion for an ex parte hearing was denied and the stay of execution was extended until November 16, 1995.

Following the superior court's denial of an ex parte hearing, Skipper's counsel filed a petition for writ of certiorari and writ of supersedeas in the North Carolina Supreme Court. This petition was filed solely to challenge the superior court's denial of an ex parte hearing on the request for funds. On November 15, 1995, Skipper's petition for certiorari challenging the denial of an ex parte hearing was denied. That evening, Skipper's defense counsel discussed several legal matters with superior court Judge Jack Hooks, Jr., by telephone. Judge Hooks had presided over all post-conviction proceedings in the case up to that date. According to an affidavit of Judge Hooks provided at the request of Skipper, counsel requested extension of the stay of execution which was due to expire the following morning. See JA 91-92. During this conversation, counsel indicated an intention to seek reconsideration by the state supreme court of its denial of his petition for certiorari and stressed his need for the aid of mental health expert assistance in preparing a proper motion for appropriate relief. After concluding this discussion, Judge Hooks telephoned an Assistant Attorney General and received her objections to a further stay. Judge Hooks then considered the matter, decided to deny Skipper's motion, and called defense counsel to inform him of the decision. Upon learning of this decision, counsel asked Judge Hooks whether he should file a motion for appropriate relief the following day. Judge Hooks responded that he was not ruling on any other motion but that Skipper's counsel "was proceeding under the statute addressing Motions for Appropriate Relief without limitation as to time or some language to that effect." JA 93.

4

The following day (the date the extant stay was set to expire), no new execution date having been set, Skipper filed a notice of appeal from Judge Hooks' order and a (later denied) motion in the state supreme court for reconsideration of that court's denial of certiorari. On November 20, 1995, no new execution date having yet been set, Skipper was served with notice of a hearing to set a new execution date and with a show-cause order why counsel should not be held in contempt for failing to timely file a motion for appropriate relief. At the hearing on December 11, 1995, before Superior Court Judge William C. Gore, Jr., the State, without prior notice to defense counsel, withdrew its show-cause motion and moved orally for the setting of a new execution date and an order barring Skipper from raising any claims by motion for appropriate relief in the state courts. See JA 76. Without specifying the legal basis for his ruling, Judge Gore on that day granted the State's motion by an order which "procedurally barred [Skipper] from filing further Motions for Appropriate Relief" and set an execution date for February 10, 1996. JA 90.

On December 22, 1995, Skipper filed a petition for certiorari in the North Carolina Supreme Court, challenging the superior court's order barring him from asserting any claims by motion for appropriate relief in state court. See JA 7. As an appendix to that petition and as an alternative basis for requested relief, Skipper attached a "motion for appropriate relief" which the petition asserted was necessarily incomplete because of the lack of requested assistance of mental-health experts. See JA 23. The appended motion for appropriate relief asserted seven federal constitutional claims other than those that had been raised on Skipper's direct appeal. Resisting the petition for certiorari, the State contended only that it should be denied because the superior court order which it challenged was properly entered as within the court's inherent authority. JA 97.

On January 24, 1995, the state supreme court granted the petition for certiorari, specifying that the grant was "for the limited purpose of entering" a two-paragraph order that followed. In that order, the court stated that it was treating the appended motion for appropriate relief "as a motion for appropriate relief filed with this Court;" that it had "thoroughly considered the matters raised in the motion, determined that none require an evidentiary hearing and that none allow

5

defendant any grounds for relief;" and that "the motion is therefore denied." JA 166.

On January 30, 1996, Skipper filed in the United States District Court for the Eastern District of North Carolina a motion for stay of his execution and the appointment of counsel for the purpose of seeking federal habeas corpus relief. The district court entered orders staying the execution, allowing sixty days for petitioner to file a federal habeas corpus petition, and appointing counsel. On March 20, 1996, the court granted an extension of time to file the petition with a new due date set for April 15, 1996. On March 25, the court granted Skipper's motion for funds to retain the services of a psychiatrist and on April 9 granted a motion for further funds for the appointment of a second mental-health expert. The petition for writ of habeas corpus was timely filed on April 15, 1996. In it, Skipper presented both the seven claims raised in his motion for appropriate relief filed in the state supreme court[1] and twenty-one of the federal claims he had raised on direct appeal to the state supreme court but had not later included in his motion for appropriate relief.[2] The State moved for

---

[1] These claims are: (1) ineffective assistance of counsel at the guilt/innocence phase of the trial because of failure to present evidence of mental retardation and organic brain injury; (2) failure to provide appellate review of proportionality determination in violation of due process; (3) unconstitutional juror taint stemming from the jury's improper consideration of parole at the sentencing stage; (4) ineffective assistance because of counsel's failure to request peremptory instructions with regard to all uncontroverted mitigating factors; (5) delegation of calendar control to the district attorney in violation of Skipper's due process and equal protection rights; (6) ineffective assistance in failure to present evidence of intoxication at the guilt/innocence phase; (7) ineffective assistance in failure to present evidence of statutory mitigation related to mental age and to seek a peremptory instruction on this mitigating circumstance. See JA 23-24.

[2] These claims are: (1) denial of jury instruction on the lesser included offense of second-degree murder; (2) denial of request for an instruction on voluntary intoxication at the guilt stage; (3) failure to grant a mistrial after prosecutor made reference to Skipper's failure to testify; (4) unconstitutional imposition of death penalty on mentally-retarded defendant; (5) denial of accurate instruction on parole eligibility; (6 & 7) denial of motion to question jurors regarding the meaning of a life sentence and

6

summary judgment urging, <u>inter alia</u>, procedural default of all the federal claims asserted. The district court granted the State's motion and denied the writ based upon the court's conclusion that all of the claims had been procedurally defaulted during the course of state court proceedings and that the default was not excused by the requisite showings of cause and prejudice. <u>See</u> JA 417-30.

In finding all the claims procedurally defaulted, the district court did not differentiate in its analysis between the seven claims that had only been raised collaterally in Skipper's motion for appropriate relief in the state supreme court and the twenty-one claims that he earlier had raised on direct appeal to that court. This is most plainly indicated in the district court's identification of those state court decisions to which it should look to determine the basis upon which the federal claims in the habeas petition had been denied by the state courts. The only two considered were "the last two . . . involving Skipper's motion for appropriate relief:" specifically, the state superior court order of December 11, 1995, which barred Skipper from raising any claim in state court by motion for appropriate relief and the state

_____

the possibility of parole and views of mental impairment; (8) limitations on the questioning of two jurors regarding whether they would automatically vote for death; (9) exclusion of juror, for cause, because of her death-penalty views; (10) prosecutor's exercise of peremptory challenges against jurors who expressed reservation about imposing the death sentence; (11) arbitrary questioning of jurors by trial court; (12) improper instruction that premeditation could be inferred from lack of provocation and the vicious nature of the killing; (13) submission of aggravating factor not supported by the evidence; (14) improper instruction on the mitigating factor of age; (15) improper instruction that jury could refuse to consider mitigating evidence; (16) failure to instruct jury that all jurors must consider all mitigating circumstances found by any one juror to exist; (17) excluding proper cross-examination questions by defense counsel; (18) failure to instruct the jury that the State had the burden of proving the non-existence of each mitigating circumstance beyond a reasonable doubt rather than by a preponderance of the evidence; (19) exclusion of evidence during cross-examination; (20) the North Carolina death penalty statute is unconstitutional generally; (21) death sentence imposed under the influence of passion and prejudice and disproportionately in this case. <u>See</u> JA 297-300.

7

supreme court order of January 24, 1996, which denied the motion for appropriate relief thereafter filed with it. JA 417-18. Not considered as relevant to the inquiry was the decision of the state supreme court which had rejected on Skipper's direct appeal all of the twenty-one federal claims not later raised in his motion for appropriate relief.

Looking to the January 24, 1996 order of the state supreme court which had denied Skipper's motion for appropriate relief, the district court concluded that the denial was not on the merits of the federal claims it presented, but was on the basis of their procedural default, or at least was alternatively based. See JA 419-22. Because, however, the court was "unsure if [the state supreme court's] decision constitutes the `last reasoned' decision" on the claims raised in the motion for appropriate relief, the court looked also to the state superior court's order of December 11, 1995, which had itself imposed a procedural bar on raising any claims by motion for appropriate relief. JA 422. As to that decision, the court first observed the obvious: that because the claims ultimately presented in the motion for appropriate relief were not raised before the superior court, that court's decision could not have been on the merits of those claims. Further, though conceding that no specific state statutory authority for the imposition of such a procedural bar was apparent, the district court concluded that, whether or not authorized, the bar imposed was based upon an independent and adequate state ground and hence must be accepted as such by federal habeas courts. See JA 423-26.

Having thus concluded that neither the January 24, 1996, state supreme court order nor the December 11, 1995, state superior court order "addressed the merits of Skipper's motion for appropriate relief" but instead "relied on a state procedural bar," the court held that it was "foreclose[d] . . . from reviewing the merits of Skipper's habeas corpus petition." JA 426. Although the court's analysis had related only to the seven federal claims included in Skipper's post-conviction motion for appropriate relief and had not looked to any state court decision respecting the twenty-one claims raised on direct appeal, the court's order nevertheless denied all the claims in the petition as procedurally defaulted. See JA 430.

This appeal followed.

8

II.

The dispositive issue is whether the district court properly ruled that all of the federal claims presented in Skipper's federal habeas corpus petition must be dismissed because they had been procedurally defaulted in the course of state court proceedings. We review that purely legal ruling de novo, see Beaver v. Thompson, 93 F.3d 1186, 1190 (4th Cir. 1996), under settled principles which we summarize here briefly.

The basic principle, grounded in notions of federalism and comity, is that federal courts will not consider on collateral review of state court criminal convictions a federal claim which the state courts have finally dismissed on an "independent and adequate" state ground, which includes procedural defaults under state law. See Wainwright v. Sykes, 433 U.S. 72, 81-90 (1977); Bennett v. Angelone, 92 F.3d 1336, 1343 (4th Cir. 1996).

This basic principle is well-settled, but its application can be difficult when the basis for the relevant state court decision is ambiguously or cryptically stated or, because not even hinted in the decision itself, can only be inferred from the total context of the state court proceedings. See Harris v. Reed, 489 U.S. 255, 262 (1989). Several sub-principles may aid the inquiry.

The relevant state court decision for purposes of the inquiry is that of "the last state court to be presented with the particular federal claim" at issue. Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991). If "it fairly appears that [that decision] rested primarily on federal law or was interwoven with federal law" there is a presumption that it did not rest on an independent state law ground. Coleman v. Thompson, 501 U.S. 722, 739 (1991). To find a claim thus foreclosed, it is not sufficient that the state court could have applied a procedural default under state law; it must actually have done so. Caldwell v. Mississippi, 472 U.S. 320, 327 (1985). A decision which bases dismissal both on the merits and on an independent and adequate state law ground forecloses federal habeas review. See Harris v. Reed, 489 U.S. 255, 264 n.10 (1989). And, finally, even where a state court decision is based entirely on an independent state procedural default ground, that ground must be a constitutionally "adequate" one. This

9

means that it must be a "firmly established and regularly followed state practice." James v. Kentucky, 466 U.S. 341, 348-49 (1984) (citations omitted). See Ford v. Georgia, 498 U.S. 411, 424 (1991) (applying constitutional adequacy requirement to reject state supreme court's ad hoc procedural bar of federal claim). This principle insures that novel, aberrational procedural requirements cannot be used to thwart federal habeas review of state court criminal judgments. See NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 457-58 (1958).

III.

In applying these principles to the habeas petition here, it is first necessary to make the differentiation (not made by the district court) between the two different sets of federal claims included in the petition. For it is plain that different state court decisions must be looked to to determine whether the two sets were rejected on the merits or on independent and adequate state procedural default grounds. See Ylst, 501 U.S. at 801 (inquiry is directed to decision of "last state court to be presented with a particular federal claim") (emphasis added).

We therefore consider the two sets of claims separately.

A.

As to the twenty-one claims not included in Skipper's motion for appropriate relief, the last state court decision denying those claims is plainly the decision of the North Carolina Supreme Court which on Skipper's direct appeal rejected all those claims (along with ten others not included in the federal habeas petition). See Skipper, 446 S.E.2d 252 (N.C. 1994). And, it is equally plain that all (save possibly one)[3] were rejected on the merits by that decision. Id.

_____

[3] Claim (4)--that imposition of the death penalty on a mentally retarded person is unconstitutional--was said by the state supreme court to have been "waived" by Skipper's failure to raise it by objection in the trial court or by formal "assignment of error" on his appeal. Skipper 446 S.E.2d at 283. The State has not, however, relied on that specific finding of "waiver" of this particular claim on this appeal. We decline to address it sua sponte, reserving the question without prejudice to either party in further proceedings.

10

As indicated, the district court did not, however, consider this direct-appeal decision of the state supreme court as the relevant one respecting these particular federal claims. Critically, the only two decisions that were considered did not deal at all with these claims-- either expressly or impliedly. Accordingly, the district court's denial of these claims cannot be affirmed on the basis of the two state court decisions upon which it solely relied.

Recognizing this difficulty, the state contends on this appeal that we may affirm on an alternative theory: that these claims were procedurally defaulted by Skipper's failure to include them in the motion for appropriate relief. This contention fails for several reasons.

First, there is a serious procedural impediment. This contention was not advanced in the district court. While, as the state contends, we may affirm judgments on alternative grounds to those relied upon by a lower court, see Dandridge v. Williams, 397 U.S. 471, 475-76 n.6 (1970), this contemplates that the alternative ground shall first have been advanced in that court, whether or not there considered. Where it has not been, a countervailing rule comes into play. Ordinarily, for very good reasons, we do not decide issues on the basis of theories first raised on appeal. Hormel v. Helvering, 312 U.S. 552, 556 (1940) (explaining rule's basis). And, though we may, as a matter of discretion, do so in exceptional circumstances, Singleton v. Wulff, 428 U.S. 108, 121 (1975), no such circumstance is present here. Instead, all the reasons for applying the ordinary rule as explained in Hormel militate in favor of applying it here. The State does not advance any exceptional circumstance pushing the other way; indeed, it does not acknowledge the rule's existence.

Even were we nevertheless to consider this newly-raised contention, it would not avail the State. The reason is simple: The superior court order did not decide anything about these twenty-one claims; they were not presented to that court for decision on either procedural default grounds or on the merits.[4] In entering its December 11, 1995,

_____

[4] The State seems to contend that because Skipper could have sought reconsideration of these rejected direct-appeal federal claims in a motion for appropriate relief, the superior court order barring him from raising

11

order, the court therefore made no decision respecting these claims. This leaves as the last state court to which these claims were presented the state supreme court which on Skipper's direct appeal indisputably denied all (save possibly one) on the merits. We therefore conclude, contrary to the district court's holding, that those twenty-one claims were not procedurally defaulted so that as to them federal collateral review is not foreclosed.

B.

There remains for consideration the basis upon which the seven federal claims raised in Skipper's motion for appropriate relief were rejected by the "last state court to which they were presented for decision." As indicated, the district court looked first to the state supreme court's January 24, 1996, order denying those claims as being the relevant decision. Then, "being unsure" whether it might not have been, the court looked alternatively to the state superior court's order of December 11, 1995, as possibly the "last reasoned" decision. And, the court concluded that both had rejected the federal claims on grounds of procedural default.

_____

any further claims by this means was effectively a decision denying those claims on procedural default grounds. See Appellee's Br. at 38. That cannot be. While Skipper certainly could have sought reconsideration of those claims in a motion for appropriate relief, he was under no compulsion to do so in order to preserve them for federal collateral review. Exhaustion principles would not have required it. See Brown v. Allen, 344 U.S. 443, 447 (1953). Neither would any independent state law rule of procedural default of which we have been made aware. Indeed, the most relevant state procedural rule brought to our attention indicates that any such attempt would have been flatly rebuffed. See N.C. Gen. Stat. § 15A-1419(a) (1988) (motion for appropriate relief may be denied where underlying issue previously determined on the merits on direct appeal or collateral review unless there has been an intervening retroactive change in controlling law). There is no suggestion here of intervening law change that Skipper might have been able to invoke. We therefore refuse to accept the premise, essential to the State's theory, that the superior court order was by this indirect means effectively a decision rejecting, on procedural default grounds, these twenty-one claims.

12

We disagree with that conclusion. We hold instead that the relevant decision is that of the state supreme court, and that it rejected the federal claims on the merits, not on grounds of procedural default.

First off, it is clear that the relevant decision was that of the state supreme court, not that of the state superior court. The only basis upon which the latter decision, not the former, could be considered the relevant one is if, as the State suggests, the supreme court's decision was an unreasoned affirmance of the superior court's procedural bar order, so that we must look to the latter as the last reasoned decision. See, e.g., Ashe v. Styles, 39 F.3d 80, 85 (4th Cir. 1994). Such an interpretation is flatly belied by the state supreme court's order. In granting the petition for certiorari, even for the limited purpose announced, and then "thoroughly considering" the matters raised in the appended motion for appropriate relief, the supreme court could not have affirmed an order which "procedurally barred" raising the very claims considered by the court. The district court therefore need not have considered on an alternative basis the superior court order, and neither will we. We confine consideration to the supreme court's order denying the motion for appropriate relief.

In deciding the basis for that decision--whether it was on the merits of the federal claims or instead rejected them on state procedural default grounds--we ask whether "it fairly appears that [it] rested primarily on federal law or was interwoven with federal law, that is [whether we have] good reason to question whether there is an independent and adequate state ground for the decision." Coleman, 501 U.S. at 739. If it does so "fairly appear[ ]," that is, if we have "good reason to question" the basis for the decision, there is a conclusive presumption that the state court's rejection was on the merits. Id.; Nickerson v. Lee, 971 F.2d 1125, 1127 (4th Cir. 1992).

In analyzing the state court decision under this standard, we look first to its text--which may be dispositive. If it is not--or if thought proper as a means of aiding our inquiry--we may look to the procedural posture of the decision, including the motion papers before the court, see Coleman, 501 U.S. at 744 (taking into account motion papers upon which relevant decision based in course of rejecting petitioner's argument of ambiguity they revealed), and, if available, any factually relevant precedent.

13

We look first to the language of the state supreme court's decision: to what of relevance it said, and what of relevance it did not say.

> Defendant's petition for writ of certiorari is allowed for the limited purpose of entering the following order:
>
> The motion for appropriate relief which defendant would have filed in the trial court and which is attached to the petition for certiorari to this Court is treated as a motion for appropriate relief filed with this Court.
>
> The Court, having thoroughly considered the matters raised in the motion for appropriate relief and having determined that none require an evidentiary hearing for determination and that none allow defendant any grounds for relief, the motion is therefore denied.

JA 166.

Take first what it did not expressly say, as bearing upon whether it was on the merits or on grounds of procedural default. Here we have a wash: it does not expressly say either that it is made on the merits or for procedural default.

When we look to what it did say as possibly implying the basis for decision, the critical operative passages are only these: "having thoroughly considered the matters raised;" "having determined that none require an evidentiary hearing for determination;" having determined that "none allow defendant any grounds for relief;" "the motion [for appropriate relief] is therefore denied."

Skipper contends that the implication of all these passages is of disposition on the merits of the federal claims. The State counters that each passage is equally consistent with their denial on procedural default grounds.

Assuming that the language itself is inconclusive on the issue, we think that the answer is found in the procedural context in which the decision was rendered. In that context are powerful indicators which

14

persuade us that the decision was not based on grounds of procedural default but on the merits of the federal claims.

Take first the basis upon which the matter was presented to and decided by the court. Skipper petitioned for a writ of certiorari seeking vacatur of the superior court's procedural bar order, and also sought first-instance substantive relief on the seven federal claims in his appended motion for appropriate relief. The State resisted and sought denial of the petition for certiorari only on the grounds that the procedural bar order challenged by the petition was properly entered. JA 97.

The state supreme court therefore had two different matters presented for decision: the challenge by Skipper's petition for certiorari to the superior court's procedural bar order, and the federal claims asserted in the motion for appropriate relief. To reject Skipper's challenge to the procedural bar order, the court had only to deny the petition for certiorari which directly challenged that order. If it did so, that denial would also necessarily reject, as properly procedurally barred, the federal claims sought to be presented for decision on the merits. What the court did, however, was to grant the petition for certiorari, whose sole purpose was to challenge the procedural bar order, thereby allowing the court to "consider" federal claims which it would not have considered had they been procedurally barred on the only basis urged by the State.

The plainly indicated, certainly most plausible, interpretation of what this decision did is that it rejected the <u>only</u> basis urged by the State for finding these federal claims procedurally barred and, in then "considering" the federal claims not so procedurally defaulted, necessarily considered them on the merits.

That this was the necessary effect of the decision is borne out by historic practices of the state supreme court. In each of the six cases prior to this one in which the court has granted certiorari to a post-conviction petitioner, the grant has been for the purpose of reversing some action taken by the court below.**5** By contrast, the court's invari-

_____

**5** See State v. Daughtry, 477 S.E.2d 34 (N.C. 1996) (reversing superior court order denying stay of execution); State v. Jones, 454 S.E.2d 664

15

able practice, as documented by Skipper and not contested by the State, has been simply to deny petitions for certiorari where claims of procedural default are being upheld. See Appellant's Brief at 21 and attachment C. No reason appears why the decision here did not conform to that pattern.

Finally, there is the nature of the state superior court's procedural bar order which Skipper's petition for certiorari challenged and which the State contends was the basis for the state supreme court's decision denying Skipper relief. At the time that order was entered, there was no time-bar for bringing a motion for appropriate relief in North Carolina. In fact, N.C. Gen. Stat. § 15A-1415 (styled "Grounds for appropriate relief which may be asserted by defendant after verdict and without limitation as to time") then provided that "at <u>any</u> time after verdict, the defendant by motion may seek appropriate relief upon any grounds enumerated in this section." N.C. Gen. Stat. § 1415(a) (Supp. 1994) (emphasis added). Subsection (b) then listed nine grounds that must be asserted in a motion for appropriate relief within ten days of the verdict. The State does not dispute that Skipper's claims fell squarely within subsection (a) and not (b). In fact, the State appears to concede that § 1415(a) did not then contain a time-bar of any kind. <u>See</u> Appellee's brief at 24 ("In North Carolina at the time of Skipper's state post-conviction review, a defendant was entitled to file his motion for appropriate relief `at any time after verdict.'") (quoting § 15A-1415). In 1996, North Carolina amended § 1415(a) and placed a 120-day time restriction on motions for appropriate relief in capital cases. The State does not suggest that this later amendment was the codification of a pre-existing <u>de facto</u> norm.

_____

(N.C. 1995) (reversing superior court order denying appointment of post-conviction counsel); <u>State v. Zuniga</u>, 444 S.E.2d 443 (N.C. 1994) (reversing order denying motion for appropriate relief); <u>State v. Taylor</u>, 393 S.E.2d 801 (N.C. 1990) (affirming in part and reversing in part an order of the superior court awarding discovery and denying funds for experts); <u>State v. Brown</u>, 315 S.E.2d 688 (N.C. 1984) (reversing superior court order denying appointment of post-conviction counsel); <u>State v. McDowell</u>, 310 S.E.2d 301 (N.C. 1984), <u>overruled by McDowell v. Dixon</u>, 858 F.2d 945 (4th Cir. 1988) (reversing superior court order granting post-conviction relief).

16

As Skipper's petition for certiorari came to the state supreme court, it therefore challenged the imposition of a procedural bar that was apparently unprecedented in state court practice and arguably directly at odds with state postive law. This case therefore is unlike cases where the procedural default urged as the basis for state court denial of federal claims is one clearly established and clearly violated. Such a case is Coleman itself, where the state had urged procedural default on the basis of a conceded violation of a 30-day time bar for noticing appeals. See Coleman, 501 U.S. at 727. In such cases, procedural default is the most readily apparent basis for an unspecific denial. Here, by contrast, it is difficult to believe that had the state supreme court intended to uphold this unprecedented procedural bar in the face of a statutory provision at seeming odds with it, it would not have said so and explained why. Because that procedural bar was the only basis for procedural default urged by the State, the supreme court's silence on the point is telling.

For these reasons, looking both to the language of the state supreme court decision and to the procedural context of its entry, we conclude that the decision was not based on an adequate and independent state law ground.**6** Federal collateral review of the seven federal claims presented in the motion for appropriate relief is not, therefore, foreclosed.

_____

**6** Both sides attempt to draw on specific judicial precedent for their conflicting positions respecting the basis for the state supreme court's decision. In view of the completely unique procedural context in which this decision was rendered, and the equally unique disposition it involved, none of the few cases cited by either side as precedent is more than marginally apposite. None remotely involved the grant by a state's highest court of certiorari "for a limited purpose" that led to consideration of a post-conviction motion for collateral relief by that court after the raising of claims by such a motion had been "procedurally barred" by a lower state court. The decision, for the purpose at hand, is, therefore, sui generis, and has to be interpreted accordingly. The closest case in point is probably Nickerson in which this court, concluding that "at a minimum" it had "good reason to question whether a decision was based on an independent and adequate state ground," found federal collateral review not foreclosed. 971 F.2d at 1128.

17

IV.

Having determined that none of the federal claims raised in Skipper's § 2254 petition was procedurally barred, there remains for decision the proper disposition of this appeal. In view of the district court's dismissal on procedural default grounds, it of course has never addressed the merits of any of the claims. Neither has it considered whether in order properly to address some of them, evidentiary hearings might be required. Neither, finally, has it addressed assertions by the State, renewed on this appeal, that some of the claims may be barred not by procedural default but under the "new rule" principles of Teague v. Lane, 489 U.S. 288 (1989).

While Skipper has renewed on this appeal his argument on the merits of various of his claims, and the State has renewed its Teague claims as alternative grounds for dismissal of many of the claims, we think all should be addressed in the first instance--as they have not yet been--by the district court. We will therefore vacate the district court's judgment and remand for first instance consideration of Skipper's claims on the merits, and any defenses, substantive or procedural, including those based upon Teague, that were properly raised by the State. In doing so, we of course express no opinion on the merits of either claims or defenses, nor on whether evidentiary hearings may be required for their proper disposition.

SO ORDERED

18