**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

STEVE EDWARD ROACH,
Petitioner-Appellant,

v.

No. 98-26

RONALD ANGELONE, Director,
Virginia Department of Corrections,
Respondent-Appellee.

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
Samuel G. Wilson, Chief District Judge.
(CA-97-693-R)

Argued: March 3, 1999

Decided: May 4, 1999

Before WIDENER, NIEMEYER, and KING, Circuit Judges.

_____

Certificate of appealability denied and appeal dismissed by published
opinion. Judge King wrote the opinion, in which Judge Widener and
Judge Niemeyer concurred.

_____

**COUNSEL**

**ARGUED:** Steven Marc Schneebaum, PATTON BOGGS, L.L.P.,
Washington, D.C., for Appellant. Robert Quentin Harris, Assistant
Attorney General, OFFICE OF THE ATTORNEY GENERAL, Rich-
mond, Virginia, for Appellee. **ON BRIEF:** Benjamin G. Chew, Willa
B. Perlmutter, Susan M. Mathiascheck, PATTON BOGGS, L.L.P.,

Washington, D.C., for Appellant. Mark L. Earley, Attorney General of Virginia, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Appellee.

_____

**OPINION**

KING, Circuit Judge:

In 1995, Steve Edward Roach ("Roach"), was convicted of capital murder in the State of Virginia and sentenced to death. In 1996, the Supreme Court of Virginia affirmed the sentence, Roach v. Commonwealth, 468 S.E.2d 98 (Va. 1996), and the Supreme Court of the United States denied certiorari. Roach v. Virginia, 519 U.S. 951 (1996). Upon exhausting his state collateral remedies, Roach petitioned the United States District Court for the Western District of Virginia for a writ of habeas corpus. See 28 U.S.C.A. § 2254 (West Supp. 1998). After reviewing the parties' legal arguments and conducting an evidentiary hearing, the district court, on July 29, 1998, denied habeas corpus relief.

Roach has appealed to this court, pursuant to 28 U.S.C. § 1291, from the final order of the district court. In addition, Roach has filed with us a petition for a certificate of appealability, pursuant to 28 U.S.C. § 2253(c)**1** and Fed. R. App. P. 22. On appeal, Roach raises

_____

**1** 28 U.S.C. § 2253(c) provides, in pertinent part:

> (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from -
>
> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State Court

. . . .

> (2) A certificate of appealability may issue . .. only if the applicant has made a substantial showing of the denial of a constitutional right.

2

five issues that he claims warrant habeas relief. After careful consideration of each of Roach's contentions and the entire record, we find that Roach has failed to make a substantial showing of the denial of a constitutional right and that there is no basis for federal habeas corpus relief. Accordingly, we deny the petition for a certificate of appealability and dismiss the appeal.

I.

On December 3, 1993, Mary Ann Hughes ("Mrs. Hughes") was shot and killed in her home. The cause of death was a single shotgun blast to the chest. Mrs. Hughes's purse, containing her credit card and approximately sixty dollars in cash, and her 1981 Buick Regal were stolen. During the early morning hours of December 4, 1993, a Nottoway County deputy sheriff observed Mrs. Hughes's automobile parked in the parking lot of a shopping center in Blackstone, Virginia. The deputy subsequently identified Roach as the driver of the car. Later that same morning, Roach was videotaped while attempting to use Mrs. Hughes's credit card at an automated teller machine in Louisburg, North Carolina.

On December 5, 1993, a South Carolina State Trooper observed Mrs. Hughes's automobile traveling at an excessive rate of speed. When the trooper attempted to detain the vehicle, the driver stopped the car on the left shoulder of the road and escaped into the adjacent woods. The driver's clothes matched the description of the clothes Roach was observed wearing on the night of the murder.

The items retrieved from the vehicle included Mrs. Hughes's purse, a blue jacket, a number eight load shotgun shell, and a plastic bag from a Winn-Dixie grocery store. Roach's latent palm prints and fingerprints were also recovered from the interior of the automobile.

_____

28 U.S.C.A. § 2253 (West 1996). The showing which Roach is required to make in order to obtain a certificate of appealability under 28 U.S.C. § 2253, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), has not changed from the showing required of habeas corpus petitioners prior to 1996. See Mackall v. Angelone, 131 F.3d 442, 444, n.3 (4th Cir. 1997), cert. denied , 118 S. Ct. 907 (1998).

3

On December 6, 1993, Roach returned to the Commonwealth of Virginia and voluntarily surrendered to Sheriff William Morris for questioning. During questioning, Roach initially attempted to deny his involvement in the murder and theft and implicate others. However, when presented with evidence independently gathered by police, Roach confessed to the crimes. Roach told the Sheriff:

> I went over there and saw her counting the money and as I was leaving, I had the shotgun laying at the door and I shot her, took the money, the car and left, went to North Carolina. And I cashed--I tried to use--use the credit card but-- about four times[,] but it wouldn't work.

Roach v. Commonwealth at 103.

Because Roach was seventeen years old at the time of the murder of Mrs. Hughes, juvenile petitions were issued charging him with murder, using a firearm in the commission of murder, and robbery. The Commonwealth gave notice of its intent to try Roach as an adult and a transfer hearing was held in the juvenile court. The juvenile court found probable cause to believe that Roach committed the crimes and advised the Commonwealth's attorney that he could seek indictments against Roach before a grand jury.[2]

Roach was indicted and tried on charges of (1) capital murder of Mrs. Hughes in the commission of robbery while armed with a deadly weapon, in violation of Va. Code § 18.2-31(4); (2) use of a firearm in the commission of murder in violation of Va. Code§ 18.2-53.1; and (3) robbery by violence to the person of Mrs. Hughes, in violation of Va. Code § 18.2-58. The jury found Roach guilty on all three charges and the Commonwealth sought the death penalty.

_____

[2] At the time of Roach's indictment and trial, transfers from the juvenile court system to the circuit court system were controlled by Va. Code § 16.1-269. Under that statute, the juvenile court was required to determine only if there was probable cause to believe Roach had committed an offense that would be a felony had it been committed by an adult. Va. Code § 16.1-269 was repealed in 1994 and replaced with a similar provision. See Va. Code Ann. § 16.1-269.1 (Michie 1997).

In order to lawfully sentence a convicted defendant to death in Virginia, a jury must unanimously find, beyond a reasonable doubt, the presence of one of two aggravating factors. See Va. Code § 19.2-264.2 (Michie 1977). Those aggravating factors are colloquially known as the "future dangerousness predicate" and the "vileness predicate." At the sentencing phase of Roach's trial, the trial judge, finding the evidence of vileness insufficient as a matter of law, withdrew that predicate from the jury's consideration. The judge allowed the jury to consider the future dangerousness predicate alone. The jury, unanimously finding beyond a reasonable doubt that Roach represented a future danger to society, recommended the death penalty. The trial judge accepted the jury's recommendation and sentenced Roach to death.

On direct appeal, the Supreme Court of Virginia affirmed Roach's death sentence and the Supreme Court of the United States denied certiorari. Roach v. Commonwealth, supra ; Roach v. Virginia, supra. After exhausting all state collateral remedies, Roach filed his petition for a writ of habeas corpus in the Western District of Virginia. In his thorough Memorandum Opinion, Chief Judge Samuel G. Wilson considered each of Roach's contentions and found no basis for federal habeas relief. Accordingly, the district court dismissed the petition. Roach now appeals that dismissal. The issues raised on appeal, as characterized by Roach, are as follows:

> 1. The proportionality review conducted by the Supreme Court of Virginia was constitutionally defective, in violation of Roach's due process rights;
>
> 2. The evidence proffered by the Commonwealth during the penalty phase of the trial was constitutionally insufficient to support the jury's finding of future dangerousness;
>
> 3. The trial court violated Roach's due process rights by refusing to instruct the jury regarding Roach's potential parole eligibility if sentenced to life imprisonment;
>
> 4. The trial court violated Roach's due process rights by erroneously instructing the jury that its decision regarding punishment had to be unanimous;

5

5. The procedure by which Virginia transferred Roach from juvenile court to circuit court for trial as an adult denied him a constitutionally mandated individualized assessment of maturity and moral responsibility.

Although Roach has placed special emphasis on the proportionality review issue, we have, in the circumstances of this case, made a comprehensive review of each of the issues presented by him on appeal. We address each of these five issues in turn.

II.

Roach filed his federal habeas corpus petition on February 12, 1998, after the April 24, 1996 enactment of the AEDPA. Accordingly, this Court must apply the deferential standard of review imposed by the AEDPA's amendments to 28 U.S.C. § 2254(d). See 28 U.S.C.A. § 2254 (West 1994 & Supp. 1998); Green v. French, 143 F.3d 865, 868 (4th Cir. 1998), cert. denied, 119 S. Ct. 844 (1999). Under the standards imposed by the AEDPA, a federal court may not grant a writ of habeas corpus on issues adjudicated in a state court unless the state proceedings:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C.A. § 2254(d) (West 1996). There is no allegation that Roach's sentence was based on an unreasonable determination of the facts; Roach does not claim that he is actually innocent of the murder of Mrs. Hughes. Therefore, our review is controlled by § 2254(d)(1). This court has previously interpreted the language of § 2254(d)(1) as authorizing habeas relief "only when the state courts have decided the question by interpreting or applying the precedent in a manner that reasonable jurists would all agree is unreasonable." Green v. French, 143 F.3d at 870.

6

A.

First, Roach argues that we must cause a writ of habeas corpus to issue because the Supreme Court of Virginia failed to conduct a meaningful proportionality review of his death sentence, in contravention of the Eighth and Fourteenth Amendments. According to Roach, the Supreme Court of Virginia failed to adequately review the imposition of the death penalty against him, and such failure entitled him to federal habeas relief as a violation of the Due Process Clause.[3]

1.

Under Virginia law,[4] when a defendant has been convicted of a capital crime and sentenced to death, the Supreme Court of Virginia is required to determine "[w]hether the sentence of death was imposed under the influence of passion, prejudice, or any other arbi-

_____

[3] It appears from the record that Roach failed to raise this argument in his state habeas corpus petition. This issue, therefore, has not been exhausted and could be properly treated as procedurally defaulted. See Gray v. Netherland, 518 U.S. 152, 161-62 (1996). However, the issue of procedural default generally is an affirmative defense that the Commonwealth must raise and preserve. Yeatts v. Angelone, 166 F.3d 255, 261 (4th Cir. 1999). The Commonwealth has not asserted this defense here. Despite the Commonwealth's failure to preserve the issue, this court has the discretionary power to address a petitioner's procedural default sua sponte. Id. at 262. However, as we have previously noted:

> the exercise of . . . discretion should not be automatic, but must in every case be informed by those factors relevant to balancing the federal interest in comity and judicial economy against the petitioner's substantial interest in justice. Additionally, the court should consider whether justice requires that the habeas petitioner be afforded with notice and a reasonable opportunity to so address the issue of procedural default.

Id. (citation omitted). Roach has not been provided with an opportunity to address the issue of procedural default. After consideration of these factors, we believe the proper course is to decline to address the issue of procedural default sua sponte, and to address the proportionality review issue on the merits.

[4] See Va. Code Ann. § 17-110.1(c)(1),(2) (Michie 1983).

7

trary factor" and "[w]hether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." Roach v. Commonwealth, 468 S.E.2d at 113. When assessing whether the death sentence in question is excessive or disproportionate to the penalty imposed in other cases, the Supreme Court of Virginia considers "whether other sentencing bodies in this jurisdiction generally impose the supreme penalty for comparable or similar crimes, considering both the crime and the defendant." Id. (citing Jenkins v. Commonwealth, 423 S.E.2d 360, 371 (Va. 1992)).

In its review of Roach's direct appeal, the Supreme Court of Virginia made a comprehensive comparison of the record from the trial court in this case with the records of other capital murder cases in Virginia, to determine whether the death penalty imposed on Roach was excessive or disproportionate to the penalty imposed for similar crimes. Id. Because Roach's jury imposed the death penalty on the basis of the future dangerousness predicate alone, the court gave particular consideration to other capital murder cases in which robbery was the underlying felony and the death penalty was based only on the future dangerousness predicate.**5** The court also reviewed capital murder cases in which robbery was the underlying offense and a sentence of life imprisonment was imposed. Id. Based upon its review of the records from these cases, the court concluded that, while there were exceptions, juries in Virginia "generally impose the death sentence for crimes comparable or similar to Roach's murder of Mrs. Hughes." Id. at 114. Therefore, the Supreme Court of Virginia found the death penalty in this instance to be neither excessive nor disproportionate to the penalty imposed in comparable cases. Id.

_____

**5** Those cases were compiled in Yeatts v. Commonwealth, 410 S.E.2d 254, 267-68 (Va. 1991), and supplemented in Chichester v. Commonwealth, 448 S.E.2d 638, 652 (1994). Additionally, the Virginia Supreme Court stated that it considered Chandler v. Commonwealth, 455 S.E.2d 219 (Va. 1995), and Joseph v. Commonwealth, 452 S.E.2d 862 (Va. 1995). Roach v. Commonwealth at 113.

8

2.

It is a well-settled proposition that the individual States are not constitutionally required to provide defendants who have been convicted of capital crimes with "proportionality reviews" of their death sentences. Pulley v. Harris, 465 U.S. 37, 50-51 (1994). It is also generally accepted that federal habeas corpus relief is unavailable where a petitioner alleges the state court incorrectly or inadequately applied state law. See Buchanan v. Angelone, 103 F.3d 344, 351 (4th Cir. 1996), aff'd, 118 S. Ct. 757 (1998); Fisher v. Angelone, 163 F.3d 835, 854 (4th Cir. 1998). As we recently reiterated in Fisher, "basic principles of federalism permit us to review only those state court decisions that implicate federal constitutional rights." Id. In the present case, the proportionality review conducted by the Supreme Court of Virginia was mandated by a Virginia statute, not the federal constitution. Therefore, absent some specific evidence that the review procedures employed by that court constituted an independent violation of the federal constitution, we shall not entertain Roach's contention that the state court failed to follow state law. See id. at 854-55.

Recognizing the limited availability of federal habeas relief, Roach argues that the proportionality review scheme, as applied to his case, constitutes an independent violation of the Due Process Clause of the Fourteenth Amendment. Roach's basic argument may be outlined as follows: In order to avoid arbitrary and capricious sentencing and to ensure that capital punishment is applied consistently and fairly, the Eighth Amendment requires the States to institute procedures that narrow the class of persons eligible for the death penalty. Furman v. Georgia, 408 U.S. 238 (1972); Gregg v. Georgia, 428 U.S. 153 (1976); Zant v. Stephens, 462 U.S. 862 (1983). According to Roach, Virginia has decided to review the proportionality of all death sentences as the means of satisfying this constitutional requirement. Now that it has elected to provide proportionality reviews, Roach argues, Virginia must do so in accordance with the Due Process Clause. If the State's actions do not comport with due process, this Court has the authority to intercede.

Roach asserts that, since the reinstatement of the death penalty in Virginia, the Supreme Court of Virginia has never overturned a death sentence. When conducting its proportionality review, Roach claims

9

the court only reviews similar cases where the jury sentenced the defendant to death. Roach asserts that the court never reviews cases where similar defendants, convicted of similar crimes, were sentenced to life imprisonment. Such a system, Roach maintains, is merely a "rubber stamp" affirmance of the imposition of the death penalty and not the "comparative analysis" required by the Due Process Clause.

Roach's assertions directly conflict with the statements made by the Supreme Court of Virginia regarding the cases it reviewed. That court stated that it reviewed capital murder cases in which robbery was the underlying felony and the death penalty was based only on the future dangerousness predicate. Roach v. Commonwealth, 468 S.E.2d at 113. Additionally, the court reviewed the records of capital murder cases where robbery was the underlying offense and a sentence of life imprisonment was imposed. Id. In response, Roach simply maintains that the court could not have reviewed those cases and affirmed his death sentence.

Put simply, Roach would have this court attempt to "look behind" the review conducted by the Supreme Court of Virginia and endeavor to ascertain what that court "really did" (which, in his view, differs from what the court stated it did). As we explain below, this would be a virtually impossible task and the Constitution does not require us to engage in such a speculative undertaking.

3.

As noted above, this Court does not have the power to reexamine a state court's determination of state law. In Walton v. Arizona, 487 U.S. 639, 655 (1990), the Supreme Court was presented with a similar challenge to the proportionality review of the Arizona Supreme Court. The Court held that, where the statutorily defined aggravating factor had been construed in a manner that furnished sufficient guidance to the sentencer, proportionality review was not constitutionally required. Id. at 655-56. In such an instance, the Court could lawfully presume that the death sentence in question was not "wantonly and freakishly imposed" and, therefore, the sentence was not disproportionate within any recognized meaning of the Eighth Amendment. Id. The Court found that the Arizona Supreme Court undertook its proportionality review in good faith and, held that the Constitution did

10

not require it to look behind the Arizona Supreme Court's conclusion that the sentence was proportional. Id. at 656.

The same rationale is applicable here. In a capital case in Virginia, the constitutionally mandated narrowing of the class of persons eligible for the death penalty occurs twice during the trial process. First, during the guilt phase of the trial, the jury must decide if the defendant falls within a statutorily defined class of capital offenders. See e.g., Va. Code Ann. § 18.2-31(4) (Michie 1998). Second, during the sentencing phase of the trial, the jury must unanimously find the presence of an additional aggravating factor. See Va. Code Ann. § 19.2-264.2 (Michie 1977). The Supreme Court has found statutorily defined aggravating factors to satisfy the narrowing requirement, see Zant v. Stephens, supra, and we have ruled that Virginia's future dangerousness predicate is constitutional. Giarratano v. Procurier, 891 F.2d 483 (4th Cir. 1989). Therefore, pursuant to Walton v. Arizona, there being no allegation or indication that the Supreme Court of Virginia undertook its proportionality review in something other than "good faith," we will not look behind its conclusion that the sentence received by Roach was proportional to sentences received by similar defendants for similar crimes.[6] As this court noted in Buchanan v. Angelone, 103 F.3d 344 (4th Cir. 1996), aff'd 118 S. Ct. 757 (1998), "on collateral review, federal courts are not required to re-examine a state court's good faith findings." Id. at 351 (citing Walton v. Arizona,

_____

[6] We agree with the reasoning of the district court which stated in its Memorandum Opinion that:

> Even assuming that the failure by the Supreme Court of Virginia to conduct its proportionality review in a meaningful manner could, under some circumstances, amount to a violation of the Fourteenth Amendment, Roach has not demonstrated that the Supreme Court of Virginia's review of Roach's sentence was so deficient as to amount to a federal constitutional violation . . . . The record thus demonstrates that the Supreme Court of Virginia conducted a thorough review of Roach's sentence in compliance with Virginia law. Although this court may view the matter differently, it may not review the state court's good-faith finding that the death sentence was not disproportionate or excessive when compared to the sentence imposed in similar cases.

Roach v. Angelone, No. 97-0693-R, at 11-12 (W.D. Va. July 29, 1998).

11

497 U.S. at 656). Accordingly, Roach's assertion of a due process violation in the proportionality review afforded him by Virginia must fail, and this court must deny federal habeas relief on this claim.

B.

Roach next argues that the evidence proffered by the Commonwealth was insufficient, as a matter of constitutional right, to support the jury's finding of future dangerousness. By allowing the jury to consider this aggravating factor, Roach maintains, the trial court violated his Fourteenth Amendment due process rights.

As we explained in Turner v. Williams, 35 F.3d 872, 894 (4th Cir. 1994), the sufficiency of the evidence necessary to prove the existence of an aggravating factor is reviewed under the standard established by Jackson v. Virginia, 443 U.S. 307 (1979). Under the Jackson standard, a court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements . . . beyond a reasonable doubt." Jackson at 319.

1.

Virginia's statutory scheme for capital sentencing requires a jury to find the existence of at least one of two aggravating conditions before it lawfully may impose the death penalty.

> [A] sentence of death shall not be imposed unless the court or jury shall (1) after consideration of the past criminal record of convictions of the defendant, find that there is a probability that the defendant would commit criminal acts of violence that would constitute a serious continuing threat to society or that his conduct in committing the offense for which he stands charged was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind or an aggravated battery to the victim; and (2) recommend that the penalty of death be imposed.

Va. Code Ann. § 19.2-264.2 (Michie 1977). **7**

_____

**7 See also** Va. Code Ann.§ 19.264.4(C) (Michie 1980).

12

In the present case, after evidence was presented in the sentencing phase of the trial, the trial judge determined that the State had failed to present sufficient evidence to allow the jury to consider the vileness predicate. Therefore, the trial judge withdrew the vileness predicate from the jury's consideration and permitted the jury to consider only whether the State had proved beyond a reasonable doubt that Roach represented a future danger to society.

2.

During the sentencing phase of the trial, the State presented evidence regarding Roach's past criminal convictions. That evidence demonstrated that within a seven-month period prior to the murder of Mrs. Hughes, Roach had "broken and entered a private residence, stolen a .357 Magnum pistol from that dwelling, committed two automobile larcenies, and violated a condition of his probation" by carrying a shotgun, which he later used to murder Mrs. Hughes. Roach v. Commonwealth, 468 S.E.2d at 112. Of significance, the jury was also entitled to consider the evidence regarding the capital offense of which Roach had been convicted. Murphy v. Commonwealth, 431 S.E.2d 48, 53 (Va. 1993). That evidence was devastating--Roach murdered Mrs. Hughes with a shotgun as she stood in the doorway of her own home in order to steal her social security money and automobile. Roach v. Commonwealth at 112. As the Supreme Court of Virginia noted, under Virginia law, the facts and circumstances of the capital crime alone may be sufficient to support a finding of future dangerousness. Id.

This court may not substitute its view of the evidence for that of the jury. Tuggle v. Thompson, 57 F.3d 1356, 1369 (4th Cir.), vacated on other grounds, 516 U.S. 10 (1995). The Supreme Court of Virginia concluded that a reasonable jury could find that, given the evidence of Roach's escalating pattern of criminal behavior, culminating in the murder of Mrs. Hughes, there was a probability that Roach would commit criminal acts of violence that would constitute a continuing serious threat to society. Roach v. Commonwealth at 112. Viewing the evidence in the light most favorable to the prosecution, the conclusion of the Supreme Court of Virginia does not constitute an unreasonable application of, or conflict with, any clearly established federal law as

13

determined by the Supreme Court of the United States.**8** See Green v. French, 143 F.3d at 870. We agree with the Supreme Court of Virginia and with the district court that the evidence was sufficient to support the finding of future dangerousness. The trial court did not deprive Roach of any constitutional protections in this regard.

C.

Roach next argues that the trial court erred by failing to instruct the jury that, if sentenced to life imprisonment, he would not become eligible for parole for a minimum of twenty-five years. Roach asserts that this court should extend the holding of Simmons v. South Carolina, 512 U.S. 154 (1994), to include cases where, if sentenced to life imprisonment, the defendant remains eligible for parole.

1.

In Simmons,**9** the defendant was tried and convicted of capital murder. Under South Carolina law, the defendant was ineligible for parole because he had previously pleaded guilty to other violent offenses. Id. at 156. Following the defendant's conviction, the State sought the death penalty based on his future dangerousness. Id. at 157.

During the penalty phase of the trial, Simmons presented evidence that the general public apparently misunderstood the meaning of the term "life imprisonment." Id. at 159. According to the evidence presented, the majority of people believed that if sentenced to life impris-

_____

**8** After reviewing this claim, Judge Wilson properly concluded:

> The court cannot find that the Supreme Court of Virginia's conclusion that this evidence, viewed in the light most favorable to the Commonwealth, was sufficient to prove future dangerousness conflicted with clearly established federal law as determined by the United States Supreme Court.

Roach v. Angelone, No. 97-0693-R, at 10-11 (W.D. Va. July 29, 1998).
**9** We have recognized that Justice O'Connor's concurring opinion actually represents the holding in Simmons. See Keel v. French, 162 F.3d 263, 269 (4th Cir. 1998); Mu'min v. Pruett, 125 F.3d 192, 199 (4th Cir.), cert. denied, 118 S. Ct. 438 (1997).

14

onment in South Carolina, a convicted murderer would be paroled within twenty to thirty years. Id. During trial, the judge had refused to give any instructions to the jury regarding the defendant's ineligibility for parole. Id. at 160. Even when the jury inquired as to whether a sentence of life imprisonment carried with it the possibility of parole, the trial judge simply instructed the jury that they were not to concern themselves with parole or parole eligibility. Id. Shortly after receiving this additional instruction, the jury returned with a sentence of death. Id.

In her concurring opinion, Justice O'Connor noted that capital sentencing proceedings must comport with the requirements of the Due Process Clause and, in our adversary system, a criminal defendant must be allowed the opportunity to meet the State's case against him. Id. at 175. Future dangerousness is a factor upon which the States may rely in seeking the death penalty, id.; California v. Ramos, 463 U.S. 992, 1002-03 (1983); however, where the State seeks to show that the defendant will be a future danger to society, the presentation of the fact that the defendant will never be paroled and released into the general public will often be the only way in which a violent criminal can successfully meet the State's case. Id. at 177. Therefore, the Court ruled, where the defendant is truly ineligible for parole, the Due Process Clause entitles the defendant to inform the jury of that fact. Id.

Roach now asserts that the logic of Justice O'Connor's holding in Simmons should be extended to circumstances where a sentence of life imprisonment includes the possibility of parole. Roach faces a serious problem with this assertion--this court has repeatedly considered this argument and consistently rejected it. **10** As the Supreme Court held, the decision whether or not to inform the jury of the possibility of the defendant's early release is generally left to the States. Simmons at 176. "In a State in which parole is available, the Constitution does not require (or preclude) jury consideration of that fact." Id.

_____

**10 See Keel v. French**, 162 F.3d 263 (4th Cir. 1998); Wilson v. Green, 155 F.3d 396 (4th Cir.), cert. denied, 119 S. Ct. 536 (1998); Arnold v. Evatt, 113 F.3d 1352 (4th Cir. 1997).

15

In Keel v. French, Keel was convicted of capital murder in North Carolina and sentenced to death. Keel, 162 F.3d at 266. Keel argued that the trial court's refusal to instruct the jury regarding his parole status pursuant to Simmons was a violation of his Eighth Amendment rights. Id. at 270. This Court, finding that Simmons limited the right to receive such an instruction to those instances where the alternative sentence is life without the possibility of parole, dismissed the petition. Id.

The Supreme Court of Virginia also considered this issue on Roach's direct appeal. Relying on its prior decision in Joseph v. Commonwealth, 452 S.E.2d 862 (Va. 1995), the court held that the Simmons rule applied only if the defendant was ineligible for parole. Because Roach would become eligible for parole in twenty-five years, the court concluded that he was not entitled to such an instruction. Roach v. Commonwealth, 468 S.E.2d at 105.**11**

2.

In order to obtain federal habeas relief, Roach must show that no reasonable jurist could interpret the rule of Simmons as limited in application to those defendants who are ineligible for parole under state law. Green, 143 F.3d at 870. Roach simply cannot make that showing. Had he not been sentenced to death, Roach would have been eligible for parole in twenty-five years. Therefore, under this Court's interpretation and application of Simmons, Roach is not entitled to habeas relief on this claim.

_____

**11** After thoroughly reviewing this issue, the district court stated as follows:

> However compelling Roach's argument that the logic behind the decision in Simmons applies equally to his case, the court cannot find that the interpretation of Simmons adopted by the Supreme Court of Virginia is contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.

Roach v. Angelone, No. 97-0693-R, at 7 (W.D. Va. July 29, 1998).

16

D.

Roach next contests the trial court's jury instruction regarding the requirement of unanimity in the sentencing verdict. [12] Roach asserts that the last sentence of this instruction, "any decision you make regarding punishment must be unanimous," was improper. He argues that it impermissibly shifted the burden of proof and effectively instructed the jury that, in order to avoid the imposition of the death penalty, the defendant was required to persuade all of the jurors that one or more mitigating factors were applicable. This shifting of the burden of proof, Roach maintains, is constitutionally defective, and denied him the right to have all mitigating evidence considered and given appropriate weight by the jury.

1.

Unfortunately, Roach has a procedural problem with this issue--he failed to raise it on his direct appeal to the Supreme Court of Virginia. The first time Roach asserted this alleged error was in his state habeas corpus petition. The Supreme Court of Virginia, relying on its decision in Slayton v. Parrigan, 205 S. E.2d 680, 682 (Va. 1974), dismissed Roach's claim as procedurally barred. Roach v. Netherland, No. 96-2568 (Va. April 30, 1997). In Slayton, a prisoner filed a peti-

_____

[12] The trial judge instructed the jury:

> You have convicted the defendant of an offense which may be punished by death. You must decide whether the defendant shall be sentenced to death or to imprisonment for life . . . . Before the penalty can be fixed at death, the Commonwealth must prove beyond a reasonable doubt, the following aggravating circumstances, that after consideration of his history and background, there is a probability that he would commit criminal acts of violence that would constitute a continuing serious threat to society. If you find from the evidence that the Commonwealth has proved that circumstance beyond a reasonable doubt, then you may fix the punishment of the defendant at death, but if you believe from all of the evidence that the death penalty is not justified, then you shall fix the punishment of the defendant at . . . imprisonment for life . . . . Any decision you make regarding punishment must be unanimous.

17

tion for habeas corpus, alleging ineffective assistance of counsel and an impermissibly suggestive pretrial identification. Id. at 681. The sole issue before the Supreme Court of Virginia was whether the petitioner had standing to attack the allegedly improper identification in a habeas proceeding where the petitioner did not assert the defense at trial and did not raise the issue on direct appeal. Id. Reasoning that "a prisoner is not entitled to use habeas corpus to circumvent the trial and appellate processes," the court ruled that the petitioner had no such standing. Id. at 682.

Where a state court expressly denies a claim under a state procedural default rule, the defendant is generally precluded from raising that claim in a federal habeas corpus proceeding. Keel, 162 F.3d at 268 (citing Sawyer v. Whitley, 505 U.S. 333, 338 (1992)). The basis for the procedural default, however, must be an adequate and independent state ground. Coleman v. Thompson, 501 U.S. 722, 731-32 (1991). "We have repeatedly recognized that the procedural default rule set forth in Slayton constitutes an adequate and independent state law ground for decision." Fisher v. Angelone , 163 F.3d 835, 844 (4th Cir. 1998).**13** Therefore, absent a showing of actual innocence or cause and prejudice, this claim is procedurally barred from federal habeas review.

2.

As the district court noted, Roach does not maintain that he is actually innocent of the murder of Mrs. Hughes. This court, then, may only inquire as to whether cause and prejudice exists to excuse a state procedural default, not into whether the state court properly applied its own law. Fisher at 844.  Cause exists, and will serve to excuse the failure to raise a claim during a state proceeding, where the factual or legal basis for the claim was not reasonably available to the claimant at the time of the state proceeding. McCleskey v. Zant, 499 U.S. 467, 494 (1991).

_____

**13 See also Mu'min v. Pruett**, 125 F.3d 192, 196 (4th Cir.), cert. denied, 118 S. Ct. 438 (1997); Bennett v. Angelone , 92 F.3d 1336, 1343 (4th Cir. 1996); Spencer v. Murray, 18 F.3d 229, 232 (4th Cir. 1994).

18

The basis for Roach's claim here is that the trial court gave an erroneous instruction to the jury regarding the requirement of unanimity in the sentencing verdict. Both the factual and legal bases for this claim were available to Roach prior to his direct appeal. On its face, then, this claim has been procedurally defaulted. Roach, however, attempts to vault this sizable hurdle by asserting ineffective assistance of appellate counsel as the cause for his failure to raise this issue on direct appeal. Roach's argument is not compelling and must be rejected.**14**

3.

In order to prove that he has been denied his Sixth Amendment right to effective assistance of appellate counsel, Roach must satisfy the two-prong test set forth in Strickland v. Washington, 466 U.S. 668 (1984). First, Roach must show that his counsel's representation in the appellate proceedings fell below an objective standard of reason-

_____

**14** It is axiomatic that before a petitioner may obtain federal habeas relief, he must first exhaust his state remedies. 28 U.S.C.A. § 2254(b)(1) (West 1996). A claim is not exhausted until the petitioner has "fairly presented" his claim to the state's highest court. Picard v. Connor, 404 U.S. 270, 275-78 (1971). The petitioner must have presented the substance of the claim, including the facts underlying the claim, to the state court. Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997). In this instance, the district court found that Roach did not present the substance of his claim of ineffective assistance of appellate counsel to the Supreme Court of Virginia and, therefore, failed to exhaust his state remedies. Accordingly, the district court concluded, the claim is procedurally barred from federal habeas review. See Gray v. Netherland, 518 U.S. 152, 161-62 (1996).

Although the district court found Roach's claim of ineffective assistance of appellate counsel barred from federal review, it went on to address the merits of the claim. Upon review of the record, we agree with the district court that this claim is procedurally barred. A contrary conclusion would establish Strickland v. Washington , 466 U.S. 668 (1984), as the backdoor through which petitioners may avoid legitimate state procedural bars. However, like the district court, we recognize the finality of our decision in this death penalty appeal. Therefore, we have also independently reviewed the asserted merits of Roach's ineffective assistance claim and have found no basis for federal habeas relief.

19

ableness. Id. at 688. Second, he must show that his attorney's substandard conduct prejudiced him to the extent that it deprived him of a fair trial. Id. at 689. In other words, Roach must demonstrate that, but for his attorney's deficient performance, there is a reasonable probability that the result of the proceedings would have been different. See id. A reasonable probability is one that undermines confidence in the outcome of the proceedings. Id.

Roach alleges that his counsel rendered ineffective assistance when he failed to raise the allegedly improper jury instruction on direct appeal before the Supreme Court of Virginia. According to Roach, this improper instruction violated his Eighth and Fourteenth Amendment rights under the holdings of Mills v. Maryland, 486 U.S. 367 (1988), and McCoy v. North Carolina, 494 U.S. 433 (1990).

In Mills and McCoy, the trial courts instructed their respective juries that their findings as to mitigating circumstances had to be unanimous. The Supreme Court found such instructions to be unconstitutional. Mills at 384; McCoy at 444. Unlike the present case, however, both Mills and McCoy involved state sentencing schemes which required the jury to make findings as to specific mitigating circumstances. Mills at 370; McCoy at 436. A jury instruction violates the holdings of Mills and McCoy if there is a "reasonable probability" that the jury applied the instruction in such a way as to preclude its consideration of mitigating evidence. Boyde v. California, 494 U.S. 370, 380 (1990).

Unlike the sentencing schemes at issue in Mills and McCoy, the Virginia sentencing scheme does not require juries to make findings as to specific mitigating factors. Instead, juries are instructed to consider all possible mitigating circumstances before rendering their sentencing decision. Here, the trial judge instructed the jury to "consider any evidence presented of circumstances which . . . in fairness or mercy may extenuate or reduce the degree of moral culpability and punishment." Additionally, the verdict form provided to the jury indicated that it must consider all mitigating evidence and it did not limit the jury's consideration of that mitigating evidence in any fashion. Based upon these facts, the district court found it unlikely that the general unanimity instruction given by the trial court prevented the jury from considering and giving appropriate weight to the mitigating

20

evidence. Accordingly, the district court held that, to the extent the Supreme Court of Virginia considered the merits of this claim, its adjudication of the claim was reasonable under Strickland.**15**

We agree. In the present case, the trial judge instructed the jury to consider any and all evidence presented in mitigation of the crime. The verdict form reinforced that instruction. Based upon those facts, we cannot find a reasonable probability that the jury applied the general unanimity instruction in such a way as to preclude its consideration of the mitigating evidence presented by Roach.

In determining whether petitioner has demonstrated that his counsel's representation was inadequate, this court begins with the strong presumption that counsel's conduct fell within the wide range of objectively reasonable conduct. Evans v. Thompson, 881 F.2d 117, 124 (4th Cir. 1989). Because the jury instruction in question cannot be said to violate Mills and McCoy, Roach's appellate counsel's failure to raise the issue of the instruction on direct appeal does not fall outside that wide realm of objectively reasonable professional assistance. Strickland, 466 U.S. at 689. Therefore, Roach's claim of ineffective assistance of appellate counsel fails on its merits, and it is rejected.

E.

Finally, Roach argues that the procedure employed by the Commonwealth of Virginia to transfer him from the juvenile court system into the circuit court system for trial as an adult violated his Eighth

_____

**15** In this regard, the district court stated as follows:

> The court finds that the instruction, when considered in conjunction with the verdict form, did not create a "reasonable probability" that the jury applied the instruction in such a way as to preclude its consideration of mitigating evidence. Accordingly, to the extent that the Supreme Court of Virginia addressed this claim on the merits, its adjudication of the claim was reasonable under Strickland.

Roach v. Angelone, No 97-0693-R, at 17-18 (W.D. Va. July 29, 1998) (citation omitted).

and Fourteenth Amendment rights. According to Roach, because Virginia's juvenile transfer procedure does not mandate a judicial finding that the juvenile possesses the requisite maturity and moral responsibility to be tried as an adult, it is unconstitutional.

1.

At the time of Roach's arrest and indictment, transfers from the juvenile court system to the county court system were controlled by Va. Code § 16.1-269.[16] Under that statute, the juvenile court was required to determine merely if there were probable cause to believe the juvenile had committed an offense that would be a felony had it been committed by an adult.

In the present case, after the prosecution gave notice of its intent to try Roach as an adult, a transfer hearing was conducted in the Greene County Juvenile and Domestic Relations District Court. Roach v. Commonwealth at 98. The juvenile court found probable cause to believe that Roach had committed the crimes and advised the Commonwealth's attorney that he could seek indictments against Roach before a grand jury. Id. The trial court then reviewed the transfer order under Va. Code § 16.1-269 and found probable cause to believe that Roach had committed the offenses in question. Id. Subsequently, Roach was indicted, tried, and convicted.

Roach advanced this claim on direct appeal before the Supreme Court of Virginia. Relying on its previous decisions in Wright v. Commonwealth, 427 S.E.2d 379, 383-84 (Va. 1993), vacated and remanded, 114 S. Ct. 2701 (1994), aff'd 450 S.E.2d 361 (Va. 1994), and Thomas v. Commonwealth, 419 S.E.2d 606, 609 (Va. 1992), the Supreme Court of Virginia rejected Roach's argument and held that the Commonwealth was not constitutionally required to provide individualized consideration of a juvenile's moral culpability and maturity under the Virginia transfer statute. Roach v. Commonwealth at 105.

_____

[16] Va. Code § 16.1-269 was repealed in 1994 and replaced with a similar provision. See Va. Code Ann. § 16.1-269.1 (Michie 1997).

22

In Thomas, a seventeen-year-old defendant appeared in juvenile court charged with first degree murder and capital murder. Thomas at 607. The defendant and his counsel waived a preliminary hearing and a transfer hearing in the juvenile court and the defendant was transferred to stand trial as an adult in circuit court. Id. at 608. Subsequently, the defendant's court-appointed lawyer was relieved and the court appointed new counsel, who moved to remand the proceeding to juvenile court for a full transfer hearing. Id. at 609. The trial court denied the motion to remand and the defendant was tried, convicted, and sentenced to death. Id. at 608.

On appeal, the Supreme Court of Virginia held that the Constitution required neither juvenile transfer hearings nor any other additional procedural safeguards for juveniles tried for capital crimes. Id. at 609. According to the court, "Virginia's death penalty statutes provide for individual consideration of all those tried on capital charges, with the `age of the defendant at the time . . . of the capital offenses' a statutorily prescribed mitigating factor the jury may consider in determining whether to fix punishment at death or life imprisonment." Id.; see also Va. Code Ann. § 19.2-264.4(B)(v) (Michie 1998).

In Wright, a seventeen-year-old defendant was transferred from the juvenile court system to the circuit court, where he was tried as an adult and convicted of numerous violent offenses, including capital murder. Wright, 427 S.E.2d at 381-82. After finding the existence of the future dangerousness predicate, the jury fixed the defendant's sentence at death. On appeal, the defendant argued that his Eighth Amendment rights had been violated because Virginia's juvenile transfer statute did not mandate consideration of his moral responsibility and psychological maturity. Id. at 384. Relying on Stanford v. Kentucky, Wright argued that he was deprived of the individual consideration required before a state lawfully may impose the death penalty on a minor. Id. The Supreme Court of Virginia disagreed. Relying on its previous holding in Thomas, the court reiterated that the Constitution did not require juvenile transfer hearings or any other additional procedural safeguards for juveniles tried for capital offenses, and that Virginia's death penalty statutes provided the requisite individualized consideration demanded by the Constitution. Id. at 384.

23

Now, in order to obtain federal habeas relief on this claim, Roach must demonstrate that these holdings are contrary to or an unreasonable application of clearly established federal law as decided by the Supreme Court of the United States. In other words, Roach must show that the Supreme Court of Virginia interpreted or applied the precedent of the Supreme Court of the United States in a manner that reasonable jurists would all agree is unreasonable. Green v. French, 143 F.3d at 870.

2.

According to Roach, in order to pass constitutional muster, a state's laws must provide a fair basis for evaluating the culpability, moral responsibility, and maturity of a juvenile before referring him for trial and potential punishment as an adult. In order to make that determination, the State must provide the juvenile with "individualized consideration."

Like the defendant in Wright, Roach relies upon Stanford v. Kentucky, 492 U.S. 361, 375 (1989), for the proposition that the Supreme Court has mandated that this individualized culpability analysis take place prior to a decision to transfer a juvenile for trial as an adult for a capital offense. Because the juvenile court did not make such an individualized determination in the present case, Roach argues, his transfer to adult court for trial violated his Eighth and Fourteenth Amendment rights.

In our view, Roach's interpretation of Stanford is overreaching. In Stanford, the Supreme Court addressed whether the Eighth Amendment prohibited the execution of sixteen- and seventeen-year-old capital offenders. The Court concluded that the imposition of capital punishment under these circumstances did not violate the Eighth Amendment. In the portion of the opinion cited by Roach,[17] Justice Scalia discussed why state laws denying minors the right to drink alcoholic beverages, vote, or drive automobiles were inapplicable to the issue before the Court. Stanford at 374-75. According to Justice Scalia, capital punishment differs from the above generalized prohibi-

_____

[17] Only four justices joined in this portion of the opinion.

24

tions, in that individualized consideration is a constitutional require-
ment. Id.

Notwithstanding Roach's assertions to the contrary, the Supreme
Court simply did not hold that juvenile transfer statutes which do not
provide for individualized consideration of the minor's maturity and
moral responsibility violate the Constitution. Rather, Justice Scalia
concluded that the transfer statutes in question [18] required the state
courts to make determinations that ensured individualized consider-
ation of the maturity and moral responsibility of sixteen- and
seventeen-year-old offenders occurred before those minors were
required to stand trial as adults. Id. at 375. The Supreme Court did not
hold that all juvenile transfer statutes must provide an identical level
of individualized consideration to minor defendants accused of capital
crimes to be constitutional. Additionally, the Supreme Court did not
proscribe a State from providing individual consideration in another
manner.

In the present case, the Supreme Court of Virginia held that Virgin-
ia's capital sentencing scheme[19] satisfied the constitutional require-
ment of individual consideration. Roach v. Commonwealth, 468
S.E.2d at 105.[20] Because the Supreme Court did not rule that individ-

_____

[18] See Ky. Rev. Stat. Ann.§ 208.170 (Michie 1982), repealed effective
July 15, 1984; and Mo. Rev. State. § 211.071(6) (1986).
[19] See Va. Code Ann. § 19.2-264.4(B) (Michie 1998), which provides
that the defendant's age at the time of the offense may be considered as
a mitigating factor by the sentencing jury.
[20] Judge Wilson, in his Memorandum Opinion in the district court,
agreed, stating:

> Justice Scalia did not state that juvenile transfer statutes which
> do not provide for individualized consideration violate the Con-
> stitution. A reasonable jurist could conclude, therefore, that the
> Constitution does not require a judicial determination of a juve-
> nile offender's moral culpability and maturity before the state
> may try the juvenile as an adult for a capital crime. . . . The
> court concludes that Roach has not demonstrated that the
> Supreme Court of Virginia's adjudication of this claim conflicted
> with clearly established federal law as decided by the United
> States Supreme Court.

Roach v. Angelone, No. 97-0693-R, at 8-9 (W.D. Va. July 29, 1998)
(footnotes omitted).

25

ual consideration of the defendant's maturity and moral responsibility was required at the juvenile transfer stage, a reasonable jurist could conclude that Virginia's procedure satisfies the Constitution. Accordingly, Roach cannot meet his burden of proof here. He has not demonstrated that the Supreme Court of Virginia's adjudication of this claim is contrary to or an unreasonable application of clearly established federal law as decided by the Supreme Court of the United States and, therefore, he does not qualify for federal habeas relief on this claim.

III.

Roach -- who is clearly guilty of committing an egregious offense against Mrs. Hughes and the peace and dignity of the Commonwealth of Virginia -- has been accorded a full array of post-conviction remedies. He has, in candor, been provided with all the process due under our system of justice, by way of both direct appeal and collateral proceedings challenging his conviction and sentence. Pursuant to the foregoing, we must conclude that Roach has failed to make a substantial showing of the denial of a constitutional right and that there is no valid basis for habeas corpus relief. Roach's petition for a certificate of appealability is therefore denied and his appeal of the decision of the district court is dismissed.

CERTIFICATE OF APPEALABILITY
DENIED AND APPEAL DISMISSED